**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**FRANK ALTAMURA,**

                                    **Plaintiff,**                              **Case No.:16-cv-1964 (DRH) (AYS)**

                    **– against –**

**RELIANCE COMMUNICATIONS, LLC;**
**AIRTYME COMMUNICATIONS, LLC;**
**DELHI HEIGHTS, LLC; WIRELESS WORKS**
**NY INC.; MYRA PROPERTIES, LLC;**
**PARVEEN NARULA,in his individual and official**
**capacities; and ASHIMA NARULA, in her**
**individual and official capacities,**

                                    **Defendants.**

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

**ZABELL & COLLOTTA, P.C.**

1 Corporate Drive, Suite 103
Bohemia, New York 11716
Tel: (631) 589-7242
Fax: (631) 563-7475

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I.    PRELIMINARY STATEMENT ....................................................................... 1

II.   STATEMENT OF FACTS ................................................................................ 2

III.  STANDARD OF REVIEW ............................................................................... 2

IV.   ARGUMENT ..................................................................................................... 3

   A.  Defendants Made Unlawful Deductions from Plaintiff's Wages in Violation of the FLSA 3

   B.  Defendants Failed to Pay Plaintiff's Earned Commissions in Violation of the NYLL ....... 4

      i.    Defendants' Failed to Compensate Plaintiff based upon his Agreed Upon Rate of 7% Gross Profit ............................................................................................................. 5

      ii.   Defendants Inflated the Costs of Goods to Decrease their Profits All to Plaintiff's Detriment .................................................................................................................. 6

      iii.  Defendants Failed to Properly Compensate Plaintiff for "Side Deals" and for the Sale of "Seed Stock" ......................................................................................................... 7

   C.  Plaintiff is Entitled to Summary Judgment for his Claims of Retaliation under the Fair Labor Standards Act and the New York Labor Law ................................................................. 8

      i.    Plaintiff Establishes a *Prima Facie* case of Retaliation ................................................. 10

      ii.   Defendant's Proffered Justification of Plaintiff's Termination from Employment is Pretext of their Retaliatory Intentions ................................................................................ 11

   D.  Parveen Narula is Individually Liable as an Employer under the FLSA and NYLL ........ 13

   E.  Defendants must be Found Liable to Plaintiff on his Claim for Unjust Enrichment ......... 16

   F.  Plaintiff is Entitled to Summary Judgment on his claim for Conversion .......................... 17

V.  CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Accosta v. Lorelei Events Grp. Inc.*,
  No. 17-cv-07804 (NSR), 2022 U.S. Dist. LEXIS 11494 (S.D.N.Y. Jan. 21, 2022) ............. 18

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008) ................................................................................... 16

*Bickerstaff v. Vassar Coll.*,
  196 F.3d 435 (2d Cir. 1999) ..................................................................................... 4

*Carter v. Dutchess Cmty. Coll.*,
  735 F.2d 8 (2d Cir. 1984) ................................................................................... 15-16

*Cruz v. Rose Assocs., LLC*,
  No. 13-CV-0112, 2013 U.S. Dist. LEXIS 49755, 2013 WL 1387018 ................................. 15

Doo Nam Yang v. ACBL Corp.,
   427 F. Supp. 2d 327, 341 (S.D.N.Y. 2005)..................................................................... 19-20

*Flick v. Am. Fin. Res., Inc.*,
  907 F. Supp. 2d 274 (E.D.N.Y. 2012) ......................................................................... 11

FLSA. *Williams v. Epic Sec. Corp.*,
  358 F. Supp. 3d 284 (S.D.N.Y. 2019) ......................................................................... 15

*Inclan v. N.Y. Hosp. Grp., Inc.*,
  95 F. Supp. 3d 490 (S.D.N.Y. 2015) ........................................................................... 15

*Kalloo v. Unlimited Mech. Co. of NY*,
  Inc., 977 F. Supp. 2d 187 (E.D.N.Y. 2013) ......................................................................... 16

*Karic v. Major Auto. Cos.*,
  992 F. Supp. 2d 196 (E.D.N.Y. 2014) ........................................................................... 6

*Konikoff v. Prudential Ins. Co. of Am.*,
  234 F.3d 92 (2d Cir. 2000) ....................................................................................... 4

*Kwan v. Andalex Grp., LLC*,
  737 F.3d 834 (2d Cir. 2013) ..................................................................................... 13

*Ling Nan Zheng v. Liberty Apparel Co.*,
  556 F. Supp. 2d 284 (S.D.N.Y. 2008) ......................................................................... 16

*Lu v. Nisen Sushi of Commack, LLC*,
  No. 18-CV-7177 (RJD) (ST), 2020 U.S. Dist. LEXIS 46112 (E.D.N.Y. Mar. 14, 2020) ..... 16

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010) ................................................................................... 10, 11

*Perez v. G & P Auto Wash Inc.*,
   930 F.Supp.2d 423 (E.D.N.Y. 2013) .................................................................. 10

*Soto v. Miss Laser, Inc.*,
   No. 19-CV-4745 (MKB), 2021 U.S. Dist. LEXIS 254750 (E.D.N.Y. Mar. 16, 2021) ......... 13

*St. Pierre v. Dyer*,
   208 F.3d 394 (2d Cir. 2000) ........................................................................... 4

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir. 2006) ........................................................................... 19

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000) ....................................................................... 4, 13, 14

*Zuckerman v. GW Acquisition LLC*,
   No. 20-CV-8742 (VEC), 2021 U.S. Dist. LEXIS 178873 (S.D.N.Y. Sep. 19, 2021) ............. 6

**Federal Statutes**

29 C.F.R. § 531.35 ...................................................................................... 5, 12

29 U.S. Code § 203 ...................................................................................... 15

29 U.S.C. § 215 ...................................................................................... 10, 11, 13

**Rules**

Fed. R. Civ. P. 56 ...................................................................................... 4

**Other**

NYLL § 190, 651(6) ...................................................................................... 15

NYLL § 191 ...................................................................................... 12

NYLL § 191(1)(c) ...................................................................................... 6, 10

## I.    PRELIMINARY STATEMENT

Plaintiff, Frank Altamura ("Plaintiff" or "Mr. Altamura"), by and through his counsel, Zabell & Collotta, P.C., respectfully submits this Memorandum of Law in support of his motion, pursuant to Fed. R. Civ. P. 56(a), seeking summary judgment on each and every claim raised against Defendants, Reliance Communications, LLC ("Reliance"), Airtyme Communications, LLC ("Airtyme"), Delhi Heights, LLC ("Delhi"), Wireless Works NY, Inc. ("Wireless Works"), Myra Properties, LLC ("Myra"), Parveen Narula, and Ashima Narula (collectively, "Defendants"). The evidentiary record proves that Defendants committed numerous violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for which they are liable to Plaintiff.

Defendant Parveen Narula exerted his will over the Corporate Defendants throughout Plaintiff's employment without regard to legal or contractual commitments. Parveen Narula systematically reduced Plaintiff's wages and the amounts he was paid on earned sales commissions. Parveen Narula funneled the monies he diverted from Plaintiff's earned compensation amongst and between the Corporate Defendants. Parveen Narula also used such funds to pay off debts he owed to casinos. Ex. 1, p. 304 – 305. When Plaintiff began to realize Parveen Narula's deception, he exercised his rights under the FLSA and NYLL and voice his complaints directly to him. In response, Plaintiff was unlawfully terminated in retaliation for his lawfully protected complaints. Defendants attempt to justify their unlawful termination of Plaintiff's employment by claiming he was insubordinate. Plaintiff was only insubordinate in that he stood up for himself, rather than be subject to Parveen Narula's continued abuse.

Accordingly, and for the reasons set forth more fully herein, Plaintiff must be entitled to summary judgment on each of his claims against Defendants.

## II.      STATEMENT OF FACTS

Plaintiff respectfully refers the Court to his Statement of Undisputed Facts made pursuant to Rule 56.1 of the Federal Rules of Civil Procedure for a complete restatement of the facts and circumstances upon which Plaintiff relies.[1]

## III.      STANDARD OF REVIEW

Fed. R. Civ. P. 56 provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law[,]' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). The non-moving party may not "rest upon … mere allegations or denials." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000).

---

[1] Reference to Plaintiff's Rule 56.1 statement shall be designated as "P56 ¶", followed by the paragraph number.

# IV.    ARGUMENT

## A.    Defendants Made Unlawful Deductions from Plaintiff's Wages in Violation of the FLSA

Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." 29 C.F.R. § 531.35. However, throughout his employment, Plaintiff was not paid his wages free and clear. In addition to failing to pay Plaintiff at his agreed upon rate of compensation, Defendants made regular deductions from Plaintiff's earned wages.

By way of example, on December 4, 2013, Defendant Parveen Narula directed the accounting department to deduct from Plaintiff's pay, all commissions paid to Plaintiff in connection with a particular account. P56 ¶ 82. Defendant Parveen Narula personally ordered such a deduction. P56 ¶ 82. This was consistent with Defendants' established business policies and practices. Defendants made deductions from the earned wages of a salesperson if one of their accounts had "bad debt." P56 ¶ 84. Defendants would pay to its employees commissions the month after sales were made. P56 ¶ 85. However, if a customer did not pay within sixty (60) days from the sale, Defendants deducted the amount previously paid in commissions from an employee's earned wages. P56 ¶ 86. To be clear, Defendants were not lowering commissions to be paid in connection with a particular sale based upon "bad debt", they were making deductions from employee wages. This fact was confirmed by Parveen Narula, who testified that Defendants call "pay the salaries, and commissions are commissions." Ex. 1, p. 144. So, when Defendant Narula ordered those deductions be made from Plaintiff's pay, the deduction would be made from his salary – not against future commissions. This distinction cannot be overlooked.

Based upon the foregoing, it is clear Defendants maintained a policy and practice of making deductions from employee salaries. Defendants punished employees for a customer's

3

failure to timely pay its bills by withholding the employee's earned salary. Such deductions constitute a direct violation of the FLSA.

**B.      Defendants Failed to Pay Plaintiff's Earned Commissions in Violation of the NYLL**

New York law requires that "[a] commission salesperson shall be paid . . . commissions and all other monies earned or payable in accordance with the agreed terms of employment." NYLL § 191(1)(c). *Karic v. Major Auto. Cos.*, 992 F. Supp. 2d 196, 201 (E.D.N.Y. 2014). a section 191(1)(c) claim hinges on whether Plaintiff is owed commissions "earned . . . in accordance with the agreed terms of employment." *Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742 (VEC), 2021 U.S. Dist. LEXIS 178873, at *35 (S.D.N.Y. Sep. 19, 2021) "Accordingly, a claim under section 191(1)(c) 'rises and falls with plaintiff's claim for breach of contract, and [any] failure to establish a contractual right to wages necessarily precludes a statutory claim under New York's labor law.'" *Id.* (*citing Williams v. Preeminent Protective Servs., Inc.*, No. 14-CV-5333, 2017 U.S. Dist. LEXIS 65022, 2017 WL 1592556, at *4 (E.D.N.Y. Apr. 28, 2017).

Plaintiff was employed as a salesperson for Defendant Reliance Communications, LLC ("Reliance") for approximately seven and a half (7.5) years. P56 ¶ 35. Reliance is a nationwide distributor of wireless telecommunications products. P56 ¶ 1. Reliance is owned by Defendants Parveen and Ashima Narula. P56 ¶ 3. Corporate Defendants Airtyme Communications, LLC ("Airtyme"), Delhi Heights, LLC ("Delhi"), and Myra Properties, LLC ("Myra") are also each owned, jointly or separately, by Mr. and Mrs. Narula. P56 ¶ 7, 12, 25.

When accepting his role with Reliance, it was with the express agreement that compensation would be received in the form of a base salary and a commission calculated at seven percent (7%) of the profit margin of sales generated by Plaintiff. P56 ¶ 39, 45. It is undisputed that this compensation structure was never memorialized in writing. P56 ¶ 46. Over

the course of his employment, Defendants failed to pay to Plaintiff earned commissions to which he was entitled. Defendants employed different mechanisms to deprive Plaintiff of his earned commissions. Each shall be addressed in turn.

### i.    Defendants' Failed to Compensate Plaintiff based upon his Agreed Upon Rate of 7% Gross Profit

First and foremost, Defendants failed to compensate Plaintiff at his agreed upon rate of seven percent (7%) of gross profit for each sale that he made.  P56 ¶ 47. Defendants do not dispute this fact. Defendants concede Plaintiff was routinely paid commissions at the rate of four percent (4%) gross profit rather than seven percent (7%). P56 ¶ 56. For example, Defendants admit Plaintiff's commissions for sales made to 4G Wireless were calculated based at a rate of four percent (4%) of the gross profit, not seven percent (7%). P56 ¶ 56. However, Plaintiff was never advised that he would be paid less for sales he made to 4G Wireless or any other customer. P56 ¶ 58. Plaintiff maintains a steadfast claim of entitlement to compensation at the rate of seven percent (7%) gross profit for all sales regardless of the customer.

Defendants claim that Plaintiff was aware that his commissions were to be paid at a reduced rate for 4G Wireless but are unable to prove same. There exists no written instrument supporting Defendants claim that Plaintiff was to be compensated based upon a commission of less than seven percent (7%) gross profit. Defendants claim that Plaintiff was aware of the arrangement but cannot articulate who advised Plaintiff of such an arrangement. Rather, it is one of many unilateral actions undertaken by the Defendants designed to deprive Plaintiff of his earned wages. Defendants observed Plaintiff was finding success selling to customers such as 4G Wireless and decided that they should keep a greater portion of the proceeds to Plaintiff's detriment. Defendants did after all routinely lower commissions paid to employees when they made more money than expected on a sale of a product. P56 ¶ 53. Ms. Ezzo, Defendants' senior

accountant, cannot explained why such reductions were made. Ex 2, p. 150. Ms. Ezzo acknowledged that these reductions were "an issue." Ex. 2, p. 151.

Based upon the foregoing, it is undisputed Plaintiff would be paid 7% of the gross profit on all sales he made on behalf of the Defendants. Defendants concede Plaintiff was not paid 7% of the gross profit of all sales. There exists no evidence supporting Defendants' claim that Plaintiff agreed to be paid based upon a four percent (4%) commission for even a single transaction. Accordingly, we respectfully request that this Court enter Judgment against Defendants on Plaintiff's claim for failure to pay earned commissions.

### ii.      Defendants Inflated the Costs of Goods to Decrease their Profits All to Plaintiff's Detriment

Defendants reduced the commissions paid to Plaintiff by artificially increasing the costs of goods prior to determining the gross profit earned on the sales placed by Plaintiff. Specifically, Defendants deducted from the gross profit margin an amount based upon an arbitrary percentage of the sale price. Initially, Defendants reduced all profit margins by one percent (1%) of the sales cost. P56 ¶ 72. This rate was later increased to a five percent (5%) and, eventually, ten percent (10%). P56 ¶ 74, 77. Defendants cannot justify these percentage-based deductions. Prior to effectuating the percentage-based deductions, Defendants made deductions from the sale price for product cost, freight costs, returned product cost, and rebates owed to Verizon. P56 ¶ 49. Accordingly, all possible costs actually incurred by Defendants in connection with the sale were taken into account prior to the assessment of the percent-based reductions. Therefore, it is clear that the percentage-based deductions were manufactured so as to reduce the commission owed to a salesperson. Furthermore, there can also be no dispute that the policy ushering in these deductions – or the monthly commission reports that would have revealed their continuing occurrence – were never conveyed in writing to Reliance's salespeople.

These unlawful deductions were entirely consistent with Defendants' pattern and practice of decreasing an employee's earned commissions when the gross profit received was higher than expected. Put another way, when Defendants' employees, such as Plaintiff, yielded Defendants an unexpected windfall, Defendants did not share in the unexpected gains, and instead utilized various machinations to lower the amount of commissions payable to employees so as to further increase company profits. For example, Defendant Parveen Narula unilaterally reduced Plaintiff's commissions payable for October 2013 from $3,580.00 to $2,400.00. Ex. 8, p. 7 - 8. A similar deduction was made for August 2013. Ex. 8, p. 11 – 12. Defendant Parveen Narula instructed Ms. Ezzo to pay Plaintiff $1,200.00 instead of the $2,345.00 that he earned. Ex. 8, p. 11 – 12. Ms. Ezzo conceded that these unlawful deductions were made from the commissions of Plaintiff as well as Reliance's other salespeople. P56 ¶ 54. This testimony cannot be overlooked.

### iii.  Defendants Failed to Properly Compensate Plaintiff for "Side Deals" and for the Sale of "Seed Stock"

Many of Plaintiff's sales entail what are known in the telecommunications industry as "seed stock". Here, seed stock product came directly to Reliance from the manufacturer at no cost and is meant to facilitate displays, marketing, and to satisfy general demand for any given product. P56 ¶ 63. Sale of seed stock represents pure profit to which Plaintiff is entitled to a seven percent (7%) commission. Parveen Narula directed Plaintiff to conduct sales of seed stock on behalf of and/or to the benefit of Airtyme, Delhi, Wireless Works, and Myra, as well as Parveen Narula's personal account at the Wynn Casino in Las Vegas and other unidentified bank accounts. Despite Plaintiff's established rate of commission, there can be no legitimate dispute that Parveen Narula unilaterally adjusted commission amounts for these sales.

Reliance's senior accountant concedes that Plaintiff performed sales outside of Reliance's internal record-keeping system. P56 ¶ 65. Such sales were known internally at Reliance as "side

7

deals". P56 ¶ 66. The "side deals" were not included in Ezzo's monthly commission calculations. P56 ¶ 68. Defendant Parveen Narula never provided Ezzo with supporting documentation demonstrating how the calculations were determined for the commissions attributed to Plaintiff's "side deal" sales. P56 ¶ 69. To this end, Ms. Ezzo also admitted Parveen Narula routinely adjusted commission calculations if the gross profit of a product was deemed too high. P56 ¶ 53.

It cannot be disputed that Defendants employed numerous practices to reduce Plaintiff's commissions. Consequently, Defendants must be found liable to Plaintiff for depriving him of earned commissions in violation of NYLL § 191(1)(c).

### C.   Plaintiff is Entitled to Summary Judgment for his Claims of Retaliation under the Fair Labor Standards Act and the New York Labor Law

The FLSA provides that it shall be unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding...." 29 U.S.C. § 215(a)(3). "FLSA retaliation claims are subject to the [McDonnell Douglas] three-step burden-shifting framework." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see Perez v. G & P Auto Wash Inc.*, 930 F.Supp.2d 423,436 (E.D.N.Y. 2013). To establish a prima facie case of FLSA retaliation, a plaintiff must show: "(1) participation in protected activity known to defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53. "[A] causal connection between an adverse action and a plaintiff's protected activity may be established through evidence of retaliatory animus directed against a plaintiff by the defendant ... or by showing that the protected activity was closely followed in time by the

adverse action." *Id.* (internal quotation marks and citations omitted.) If the plaintiff is able to meet that standard, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the ... action." *Id.* (internal quotation marks and citation omitted). If the defendant is able to show a legitimate, non-discriminatory reason, "the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Id.* at 53–54 (internal quotation marks and citation omitted).

Like the FLSA, New York law prohibits retaliation against employees who make certain employment-related complaints. *Flick v. Am. Fin. Res., Inc.*, 907 F. Supp. 2d 274, 279 (E.D.N.Y. 2012). Section 215 of the New York Labor Law prohibits retaliation against any employee who "has made a complaint to his or her employer, or to... any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of" the New York Labor Law. N.Y. Labor L. §215(1)(a). *Id.* An employee making such a complaint need not cite a specific chapter or provision that is being violated, but must make a complaint of activity that he reasonably believes constitutes a violation of the Labor Law. *Id.* New York's Labor Law explicitly covers complaints made to an employer. *Id.* The retaliation provision of the New York Labor Law is closely analogous and is analyzed under the same burden-shifting analysis. *Crawford v Coram Fire Dist.*, 2015 Wage & Hour Cas 2d (BNA) 129045 [EDNY May 4, 2015] (*citing Higueros v. New York State Catholic Health Plan, Inc.*, 630 F.Supp.2d 265, 269–71 (E.D.N.Y.2009). Plaintiff easily establishes a *prima facie* case of retaliation.

i.   **Plaintiff Establishes a *Prima Facie* case of Retaliation**

a.   **Plaintiff Engaged in Protected Activity Under the FLSA and NYLL**

Plaintiff engaged in a protected activity when on April 22, 2015, he complained to Defendants that he was not properly paid the commissions to which he was entitled. Defendant Narula concedes that in response to Plaintiff's complaints, he had a meeting with Plaintiff. P56 ¶ 94; Ex 1, p. 100. The subject matter of Plaintiff's complaints was further reflected in text messages he sent to Parveen Narula prior to the meeting.  P56 ¶ 96. In fact, Reliance's Director of Human Resources, Eileen Lever, was aware that Plaintiff had asserted complaints about his pay and that the complaints necessitated the meeting. Ex. 3, p. 51 – 52.

Plaintiff's complaint regarding Defendants' failure to pay him his earned commissions concerned activity that constitutes a violation of the New York Labor Law. Specifically, New York law requires that "[a] commission salesperson shall be paid . . . commissions and all other monies earned or payable in accordance with the agreed terms of employment." NYLL § 191(1)(c). Furthermore, Plaintiff's complaint concerns Defendants' violations of the FLSA. As previously set forth herein, under the FLSA "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." 29 C.F.R. § 531.35. Plaintiff complained that his wages were not being paid free and clear. Specifically, Plaintiff protested the withholding of wages to which he was lawfully entitled pursuant to the terms and conditions of his employment.

b.   **Plaintiff's Termination Constitutes an Adverse Employment Action**

The retaliation provision of the FLSA expressly states that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the

FLSA]." 29 U.S.C. § 215(a)(3). The adverse action complained of herein was Plaintiff's termination from employment. Defendants do not dispute that Plaintiff was terminated from employment. Accordingly, it is undisputed that Plaintiff suffered an adverse employment action when his employment was terminated by Defendants on April 22, 2015.

### c. There Exists a Causal Connection Between Plaintiff's Protected Activity and his Termination from Employment

"A causal connection may be established by temporal proximity but can also be established through evidence of retaliatory intent." *Soto v. Miss Laser, Inc.*, No. 19-CV-4745 (MKB), 2021 U.S. Dist. LEXIS 254750, at *16 (E.D.N.Y. Mar. 16, 2021). "The Second circuit 'has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship.'" *Id.* (*quoting Sirois v. Long Island R.R. Co.*, 797 F. App'x 56, 60 (2d Cir. 2020). Plaintiff's termination occurred immediately following his engagement in a protected activity. To be clear, Defendants terminated Plaintiff's employment on the very same day that a meeting was held concerning his wage-related complaints. Defendants do not dispute that Plaintiff's termination occurred following the meeting. Therefore, this Court must find Plaintiff sufficiently established a *prima facie* case of retaliation under both the FLSA and NYLL.

### ii. Defendant's Proffered Justification of Plaintiff's Termination from Employment is Pretext of their Retaliatory Intentions

Under the *McDonnell Douglas* framework, after the defendant has articulated a non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture. *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013) *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). The plaintiff must then come forward with evidence that the defendant's proffered, non-

retaliatory reason is a mere pretext for retaliation. *Id.* "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non retaliatory reasons for its action." *Id.*

Defendants maintain Plaintiff's employment was terminated because he was allegedly insubordinate during the meeting with Defendant Parveen Narula in which Plaintiff voiced his complaints. However, Plaintiff's supposed insubordination was nothing more than an assertion of his rights under the FLSA and NYLL. Defendants claim Plaintiff was insubordinate because he allegedly used profanity while complaining about the deductions and inaccuracies in his commission payments. Defendant Parveen Narula testified Plaintiff used the word "fucking." Ex. 1, p. 101. Eileen Lever also testified that Plaintiff used the word "fucking." Ex. 3, p. 41. Neither recalled Plaintiff use any other profanities during the meeting. Ex. 1, p. 101. Plaintiff denies using curse words during the meeting but does acknowledge he used them in messages exchanged between himself and Defendant Narula. Ex. 6, p. 108. Regardless, the use of such language, particularly in this context, does not rise to the level of insubordination. Furthermore, Plaintiff's coworkers did not consider him to be insubordinate. P56 ¶ 105.

Defendant Narula regularly used such profanities when speaking with Plaintiff. P56 ¶ 90. In response to Plaintiff's request for time off to take a weekend vacation, Parveen Narula wrote to Plaintiff "where the fuck are you?" Ex. 10. On or about December 4, 2013, Parveen Narula sent an e-mail to several individuals including Plaintiff, Mr. Feldman, and Defendants' counsel, Jas Mayall of Certilman Balin, in which he demanded that Plaintiff "keep [his] big mouth shut." Ex. 13. Defendant Narula has also thrown ice and water at Plaintiff – an action Defendant Narula did not deny. P56 ¶ 106; Ex. 1, p. 330 – 331. The language used by Plaintiff has never been

considered insubordination until it was allegedly used during the very meeting in which Plaintiff complained about the inaccuracies in his earned commission. Plaintiff's alleged use of the word "fucking" was not insubordination, but an emotional response to his realization that he was being deprived his lawfully earned wages. The suggestion that Plaintiff was fired for allegedly using the word "fucking" during a meeting after more than seven (7) years of employment is preposterous. It would be unreasonable to conclude that Plaintiff's employment was terminated for any reason other than his engagement in lawfully protected activity.

Based upon the foregoing, Plaintiff respectfully submits that this Court must grant Plaintiff summary judgment on his claims of retaliation arising under the FLSA and NYLL. Plaintiff was terminated because of his engagement in lawfully protected activity.

### D.  Parveen Narula is Individually Liable as an Employer under the FLSA and NYLL

Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S. Code § 203(d). The NYLL defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." N.Y. Lab. L. § 190(3), 651(6). District courts in the Second Circuit have consistently interpreted the definition of "employer" under the NYLL coextensively with the definition under the FLSA. *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019); *see also Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (noting that the definitions of "employer" under the NYLL and the FLSA are coextensive); *Cruz v. Rose Assocs., LLC*, No. 13-CV-0112, 2013 U.S. Dist. LEXIS 49755, 2013 WL 1387018, at *2 (S.D.N.Y. Apr. 5, 2013) "To determine who qualifies as an "employer" under the FLSA and NYLL for purposes of individual liability, the Second Circuit looks to the factors enumerated in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d

13

Cir. 1984): 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Lu v. Nisen Sushi of Commack, LLC*, No. 18-CV-7177 (RJD) (ST), 2020 U.S. Dist. LEXIS 46112, at *12 (E.D.N.Y. Mar. 14, 2020). Importantly, the Second Circuit has noted that these factors do not comprise a "rigid rule for the identification of an FLSA employer." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008). Instead, these factors offer "'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA.'" *Id.*

Further, "an employer may include an individual owner who exercises a sufficient level of operational control in the company's employment of employees." *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013) (*citing Irizarry v. Catsimatidis*, 722 F.3d 99, 104-11 (2d Cir. 2013)). Individual officers or directors of a corporation may "be deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions." *Ling Nan Zheng v. Liberty Apparel Co.*, 556 F. Supp. 2d 284, 298 (S.D.N.Y. 2008). The evidentiary record establishes, beyond a reasonable doubt, that Defendant Parveen Narula was an "employer" within the meaning of the FLSA and NYLL.

Reliance is owned jointly by Defendants Parveen Narula and Ashima Narula. As Reliance's CEO, Parveen Narula controls the operations of the company. Consistent with his ownership share and position as CEO, Parveen Narula has the power to hire and fire employees.

14

As it concerns Plaintiff, he interviewed with Parveen Narula in May 2007 before he was hired. P56 ¶ 40 – 42. The interview came in anticipation of Reliance's acquisition of Plaintiff's prior employer Quintext. P56 ¶ 40. Parveen Narula later hired Plaintiff. Ex. 6, p. 222. In consideration of the foregoing, it must be determined that Parveen Narula had the power to hire and fire employees.

Defendant Parveen Narula also supervised and controlled employee work schedules and conditions of employment. As CEO, Parveen Narula exercised direct operational control over Reliance's employees, including Plaintiff. P56 ¶ 4. The record is replete with instances in which Parveen Narula exercised his will over Plaintiff. *See* Ex. 9, 13. Clearly, Parveen Narula exercised direct control over Plaintiff's conditions of employment.

Furthermore, Defendant Parveen Narula determined employee pay rates and methods of payment. Parveen Narula adjusted Mr. Altamura's commissions. P56 ¶ 51 - 53. Specifically, Parveen Narula decreased the amount of commissions that were received by sales people. P56 ¶ 51 - 54. Parveen Narula also determined the commissions that were to be paid to Plaintiff for the side deals that were made outside of Reliance's regular commission calculations. P56 ¶ 65 - 67. Parveen Narula also directed that deductions be made from Plaintiff's pay. P56 ¶ 82. Parveen Narula's control over employee pay rates and methods of payment was not limited to Plaintiff. Parveen Narula changed the compensation of Keith Gold because his earnings "weren't viable." Ex. 4, p. 37. Accordingly, Parveen Narula determined the rate and method of payments made to Plaintiff and other employees.

Parveen Narula was, in every meaningful way, Plaintiff's employer. Parveen Narula was the owner and CEO of Reliance. Parveen Narula exercised ultimate control over the operations of Reliance. Such operations included direct supervision of individual sales made by Plaintiff.

Moreover, Parveen Narula interviewed and hired Plaintiff. Parveen Narula also took part in the discussions regarding Plaintiff's termination from employment. Additionally, Parveen Narula was intimately involved in determining Plaintiff's compensation. In short, Parveen Narula was an owner, officer, and director of Reliance who exercised "operational control" in a manner sufficient to establish he is an employer within the meaning of the FLSA and NYLL.

**E.  Defendants must be Found Liable to Plaintiff on his Claim for Unjust Enrichment**

"To prevail on an unjust enrichment claim [under New York law], a plaintiff must prove that the defendant received a benefit at the plaintiff's expense and that retention of that benefit would be unjust." *Accosta v. Lorelei Events Grp. Inc.*, No. 17-cv-07804 (NSR), 2022 U.S. Dist. LEXIS 11494, at *13 (S.D.N.Y. Jan. 21, 2022) (*citing Levion v. SociÉtÉ GÉnÉrale*, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011)). In the matter at hand, Defendants were unjustly enriched when they failed to compensate Plaintiff for the "side deals" he transacted on behalf of Reliance and its affiliates, Airtyme, Delhi that were made outside of Reliance's internal record keeping system.

Again, Reliance's senior accountant concedes that Plaintiff performed sales outside of Reliance's internal record-keeping system. Ezzo Dep., at 22:11-23:12, 91:1-6. The sales Plaintiff made that were made outside of Reliance's internal record-keeping system were known internally at Reliance as "side deals". Ezzo Dep., 79:11-80:8. The "side deals" were not included in Ezzo's monthly commission calculations. Ezzo Dep., at 114:17-20, 127:19-128:2, 131:10-13, 133:10-134:11. Defendant Parveen Narula never provided Ezzo with supporting documents substantiating the manner in which Plaintiff's commissions on "side deals" was determined. Ex. 2, p. 78.

Plaintiff was required to conduct the side deal sales as a part of his regular course of work. The fact that they were made outside of Reliance's internal record-keeping system is

irrelevant to the analysis as to whether Plaintiff is owed compensation for the work he was required to perform. Plaintiff dedicated time and effort in furtherance of the "side deals" just as he would sales that were made within Reliance's internal record-keeping system. Accordingly, Plaintiff must be compensated based upon his regular commission agreement for the side deal sales.

**F.  Plaintiff is Entitled to Summary Judgment on his claim for Conversion**

"[C]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (*quoting Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44, 660 N.E.2d 1121, 637 N.Y.S.2d 342 (1995)). "Under New York law, a plaintiff stating a claim for conversion must show that he 'had legal title or an immediate superior right of possession to [an] identifiable fund and the exercise by defendants of unauthorized dominion over the money in question to the exclusion of plaintiff's rights.'" *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 341 (S.D.N.Y. 2005) (alteration in original) (*quoting Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro*, 187 A.D.2d 384, 590 N.Y.S.2d 201, 201 (App. Div. 1992); *Fin. Technologies Int'l, Inc. v. Smith*, 247 F. Supp. 2d 397, 413 (S.D.N.Y. 2002) ("[C]onversion claims may be based on money only if the plaintiff has a right to immediate possession of a specific, identifiable amount."). The improper withholding of an employee's wages can support a conversion claim. *Short v. Churchill Ben. Corp.*, No. 14-CV-4561 (MKB), 2016 U.S. Dist. LEXIS 48041, at *67-68 (E.D.N.Y. Apr. 8, 2016) (*citing Bazignan v. Team Castle Hill Corp.*, No. 13-CV-8382, 2015 U.S. Dist. LEXIS 27420, 2015 WL 1000034, at *4 (S.D.N.Y. Mar. 5, 2015)).

Here, Defendants withheld from Plaintiff lawfully earned wages he earned in the performance of his regular job duties. As previously set forth herein, Defendants deprived Plaintiff of his earned wages in various ways.

First, Defendants failed to compensate Plaintiff at his agreed upon rate of compensation. Specifically, Defendants did not pay Plaintiff commissions at the agreed upon rate of seven percent (7%) gross profit on each and every one of Plaintiff's sales. P56 ¶ 47. Rather, Defendants based Plaintiff's commissions on a four percent (4%) profit margin for sales made to certain customers, such as 4G Wireless. P56 ¶ 56.

Second, Defendants artificially lowered the profit margin it actually received on each sale made by Plaintiff which resulted in Plaintiff being paid in an amount less than he actually earned. These reductions in Defendants' profit margin took form in percentage-based deductions in which, after assessing all actual costs incurred on a sale, Defendants reduced the profit margin by a percentage of the sales price. P56 ¶ 72. The percentage-based reduction originated at one percent (1%), however, it increased to five percent (5%) and eventually ten percent (10%). P56 ¶ 72 – 78. These arbitrary deductions resulted in substantial losses to Plaintiff. For example, if Defendants' profit margin was reduced by 10% on a particular sale, from $10,000.00 to $9,000.00, Plaintiff would only be paid $630.00 in commissions rather than the $700.00 to which he was entitled.

Third, Defendants failed to properly compensate Plaintiff for "side deals" or the sales of "seed stock" he made on Defendants' behalf. The "side deals" or "seed stock" sales were not included in Plaintiff's regular monthly commission calculations. P56 ¶ 68. Rather, the amount to be paid to Plaintiff as commissions for such sales was unilaterally determined by Parveen Narula. P56 ¶¶ 65, 67, 69. Defendant Parveen Narula never provided Defendants' accounting

department with backup as to how the calculations were determined for the commissions attributed to Plaintiff's sales that were made outside of Reliance's internal record-keeping system. P56 ¶ 69.

In consideration of the foregoing, this Court must find that Defendants lawfully withheld Plaintiff's earned wages. Plaintiff's compensation was based upon a simple premise – that he would receive commissions in the amount of seven percent (7%) gross profit on all sales made. However, the record proves Defendants deviated from this structure seemingly at will. Defendants attempt to justify their deviations by claiming Plaintiff was aware of the reduced commission structure or the percentage-based reductions. However, there exists no evidence supporting such a claim. There is no written agreement supporting the supposed alterations to the terms and conditions of Plaintiff's employment – a writing required by law. Moreover, Defendants are unable to articulate when these changes were made and how and when they were communicated to Plaintiff. Absent any form of exculpatory evidence, Plaintiff must be entitled to Summary Judgment on his claim for conversion.

## V. CONCLUSION

Defendants have engaged in wholesale violations of the FLSA and NYLL. Plaintiff's role as a commissioned salesperson required that his compensation be clearly delineated in writing. Furthermore, Plaintiff was to be provided with clear and unambiguous calculations as to how his commissions were calculated. Defendants not only failed to do that which they are required but profited from their recordkeeping violations to deprive Plaintiff of lawfully earned wages. Defendants engaged in routine manipulation of Plaintiff's commissions, which resulted in their own gain. Defendants brazenly acknowledge that Plaintiff's commissions were reduced when profits – and therefore the commissions to which he was entitled – were greater than anticipated.

Defendants also acknowledge that Defendant Parveen Narula unilaterally determined the commissions that would be paid to Plaintiff on "side deals" and "seed deals" without any support as to how such commissions were calculated. When Plaintiff recognized that Defendants were stealing from him, he engaged in lawfully protected activity, and complained to Defendant Parveen Narula. As an immediate response, Plaintiff was terminated. Defendants would have us all believe Plaintiff was terminated for allegedly using the word "fucking" during the meeting in which he voiced his complaints. However, this proffered justification is just as false as Defendant Parveen Narula's sworn testimony. Defendant Parveen Narula seeks to distance himself from this matter by stating that certain issues, such as Plaintiff's commissions, were exclusively handled by Defendants' accounting department. And yet, Defendants' own business records clearly demonstrate it was Parveen Narula that was directing the manipulation of Plaintiff's commissions – a fact verified by Defendants' own accounting department. Defendants must be held liable for their complete disregard of the FLSA and NYLL. Therefore, we respectfully request that this Court entered Summary Judgment as against Defendants on all claims raised by Plaintiff and schedule an inquest on damages.

Dated:  March 31, 2021
Bohemia, New York

Respectfully submitted,

**ZABELL & COLLOTTA, P.C.**
*Attorneys for Defendants*

By:

Saul D. Zabell, Esq.
Ryan M. Eden, Esq.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
T: (631) 589-7242
F: (631) 563-7475
SZabell@laborlawsny.com
REden@laborlawsny.com

20