UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FRANK ALTAMURA,

                              Plaintiff,

          -against-

RELIANCE COMMUNICATIONS, LLC;
AIRTYME COMMUNICATIONS, LLC;
DELHI HEIGHTS, LLC; WIRELESS WORKS
NY INC.; MYRA PROPERTIES, LLC;
PARVEEN NARULA, in his individual and official
capacities; and ASHMA NARULA, in her
individual and official capacities,

                            Defendants.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 16-1964 (JS) (AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law, N.Y. Labor L. §§ 190 et seq. ("NYLL"), to recover, inter alia, unpaid wages and/or commissions he asserts Defendants unlawfully withheld from him. Before the Court, on referral from the Honorable Joanna Seybert for report and recommendation, are the parties' cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons, this Court respectfully recommends that both motions be granted in part and denied in part.

BACKGROUND

      The relevant facts, as set forth below, are taken from those portions of the parties' Local Civil Rule 56.1 statements upon which they agree, as well as the documents offered by the parties in support of and in opposition to the within motions. The Court notes that while the parties complied with the Local Civil Rules by filing their 56.1 Statements, the submissions were not particularly helpful to the Court in that they are rife with argument and assertions when they

1

should simply set forth the undisputed facts of this action. The parties' respective arguments are to be set forth in their memoranda of law, not their 56.1 Statements.

I.   The Parties

Plaintiff, Frank Altamura ("Plaintiff" or "Altamura"), was employed by Defendant Reliance Communications, LLC ("Reliance") in its Hauppauge, New York office. (Am. Compl. ¶ 10.) Reliance is a nationwide distributor of wireless telecommunication products. (Pl. Local Civ. R. 56.1 Statement ("Pl. 56.1") ¶ 1.; Def. Local Civ. R. 56.1 Statement ("Def. 56.1") ¶ 7.) Reliance is jointly owned by individual defendants Parveen Narula ("Parveen") and Ashima Narula ("Ashima"). (Pl. 56.1 ¶ 3.) Parveen is also the Chief Executive Officer ("CEO") of Reliance and owns ninety-nine percent of the company. (Pl. 56.1 ¶ 17; Def. 56.1 ¶ 1.) Ashima is Parveen's wife and maintains a one percent ownership interest in Reliance. (Pl. 56.1 ¶¶ 18-19; Def. 56.1 ¶ 2.)

Defendant Airtyme Communications, LLC ("Airtyme") is also a distributor of wireless telecommunication products, engaged in the business of repairing and refurbishing cellular telephones. (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 8.) Airtyme is jointly owned by Parveen and Ashima and is an affiliate of Reliance. (Pl. 56.1 ¶¶ 6-7.)

Defendant Delhi Heights, LLC ("Delhi Heights") was a restaurant owned by Parveen. (Pl. 56.1 ¶¶ 10, 12.) Delhi Heights was an affiliate of Reliance and was ultimately sold. (Pl. 56.1 ¶ 11; Def. 56.1 ¶ 9.)

Defendant Myra Properties, LLC ("Myra Properties") is an affiliate of Reliance. (Pl. 56.1 ¶ 14.) Myra Properties owns the building at 555 Wireless Boulevard in Hauppauge, New York, where Reliance is headquartered. (Pl. 56.1 ¶ 15; Def. 56.1 ¶ 10.) Ashima is the owner of Myra

2

Properties. (Pl. 56.1 ¶ 25.) Reliance, Airtyme, and Myra Properties are all managed on the same consolidated profit and loss statement. (Pl. 56.1 ¶ 16.)

The parties dispute whether Defendant Wireless Works NY, Inc. ("Wireless Works") – identified by Defendants as "WirelessWorks LLC") – is an affiliate or a customer of Reliance. (Pl. 56.1 ¶ 13; Def. 56.1 ¶ 11.)

II.     Plaintiff's Employment with Reliance

Prior to joining Reliance, Plaintiff was employed by Quintext Communications/UTStarcom ("Quintext"). (Pl. 56.1 ¶ 33.) Reliance purchased Quintext in July 2007, whereupon Plaintiff became employed by Reliance as a Sales Executive with respect to "inside sales." (Pl. 56.1 ¶¶ 34-36; Def. 56.1 ¶ 12.) Plaintiff was one of several employees that transferred to Reliance upon its purchase of Quintext. (Def. 56.1 ¶ 13.)

Prior to Reliance's acquisition of Quintext, Plaintiff was made aware that his commission structure would change once he was transferred to Reliance, such that he would no longer be paid in "gross sales." (Def. 56.1 ¶ 14.) Plaintiff met with Chris Christoforou, the President of Quintext at the time, and later Parveen, prior to joining Reliance, to discuss his new commission structure. (Pl. 56.1 ¶¶ 40-41; Def. 56.1 ¶ 15.) The communications between the parties during these meetings are very much in dispute; what is not disputed is that Plaintiff never had a written commission agreement with Reliance. (Pl. 56.1 ¶ 46; Def. 56.1 ¶ 16.)

Plaintiff was first employed by Reliance from July 2007 to February 2008. (Def. 56.1 ¶ 19.) Plaintiff left Reliance of his own accord in February 2008 to pursue a career in construction. (Def. 56.1 ¶ 20.) At that time, Plaintiff believed he was being paid correctly with respect to commissions earned. (Def. 56.1 ¶ 21.)

3

In approximately June 2008, Plaintiff returned to employment with Reliance, again as a Sales Executive, with a higher base salary and the same commission structure as he previously received. (Def. 56.1 ¶ 22.) Plaintiff was paid by check every other week. (Def. 56.1 ¶ 23.)

In order to earn a commission, Plaintiff needed to make a profitable sale. (Def. 56.1 ¶ 26.) Plaintiff was entitled to a commission that would change based upon the product sold, the profit of the sale, the terms of the sale and any returns of the sale. (Def. 56.1 ¶ 27.) On December 4, 2013, Parveen directed Reliance's accounting department to deduct from Plaintiff's salary all commissions paid to Plaintiff in connection with a particular account. (Pl. 56.1 ¶ 82.)

### III.    Plaintiff's Termination

On April 22, 2015, Plaintiff texted Parveen regarding an alleged discrepancy in his March 2015 commission. (Pl. 56.1 ¶ 95; Def. 56.1 ¶ 31.) The April 22, 2015 text exchange contained profane language on Plaintiff's part. (Pl. 56.1 ¶¶ 95-96; Def. 56.1 ¶ 32.) Several hours after exchanging text messages, Parveen asked Plaintiff to discuss the alleged commission discrepancy with him and Reliance's Director of Human Resources, Eileen Lever ("Lever"). (Pl. 56.1 ¶¶ 93-94; Def. 56.1 ¶ 33.) Following the April 22, 2015 meeting, Lever suggested that Plaintiff be terminated for insubordination. (Pl. 56.1 ¶¶ 97-98, 100; Def. 56.1 ¶ 36.) Parveen authorized Plaintiff's termination, which took place immediately thereafter. (Pl. 56.1 ¶¶ 101; Def. 56.1 ¶ 36.)

Plaintiff commenced the within litigation on April 21, 2016, asserting claims pursuant to the FLSA and the NYLL, as well as common law claims for conversion and unjust enrichment. (Am. Compl., Docket Entry ("DE") [72].) Plaintiff now moves for summary judgment with respect to all claims alleged in the Amended Complaint. Defendants cross-move for summary judgment with respect to all claims except Plaintiff's claim for retaliation in violation of the

NYLL, for which Defendants assert there exist multiple issues of fact requiring a trial. (DE [104].) The Court now turns to the merits of both motions.

## DISCUSSION

I. <u>Legal Standard</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." <u>Id.</u> at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." <u>Id.</u> at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248.

II. <u>Plaintiff's Claims</u>

Plaintiff's Amended Complaint sets forth the following causes of action: (1) unlawful deductions from payroll in violation of the FLSA; (2) failure to pay earned commissions in

5

violation of the NYLL; (3) retaliation in violation of the FLSA; (4) retaliation in violation of the NYLL; (5) conversion; and (6) unjust enrichment. The Court considers each claim in turn.

    A.    The Federal Claims

        1.    Unlawful Deductions from Wages in Violation of the FLSA

Plaintiff's first cause of action alleges that Defendants violated the FLSA by unlawfully deducting "business costs" from his wages, thereby denying him earned wages. (Am. Compl. ¶¶ 44-52.) Plaintiff moves for summary judgment on this claim. As proof to support this claim, Plaintiff points to the December 4, 2013 instruction from Parveen to the Accounting Department to deduct from Plaintiff's salary all commissions paid to Plaintiff in connection with a particular account. Defendants cross-move for summary judgment with respect to this cause of action, arguing that such a claim does not fall within the purview of the FLSA. (Def. Mem. of Law 6-8.)

As Defendants point out in their opposition to Plaintiff's motion, and in support of their cross-motion, Plaintiff cites to no case law whatsoever to support his novel interpretation of the FLSA. In fact, Plaintiff concedes that deductions from his commissions do not constitute a violation of the FLSA. (Pl. Mem. of Law in Opp'n and Reply 5.) Plaintiff argues, instead, that the deductions Defendants made came from his wages – not his commissions – which, according to Plaintiff, violates the FLSA. This Court declines to sustain Plaintiff's torturous reading of the FLSA.

The FLSA pertains solely to the payment of minimum wages and overtime. See 29 U.S.C. § 201 et seq.; Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013) ("The FLSA statute requires payment of minimum wages and overtime wages only . . . ."). As the Second Circuit has clearly stated, "the FLSA is unavailing where wages do

6

not fall below the statutory minimum and hours do not rise above the overtime threshold." Nakahata, 723 F.3d at 201. Plaintiff has not alleged that the deductions from his pay made by Defendants either constituted overtime or brought Plaintiff's salary below the minimum wage, as the Court assumes he is unable to do. Accordingly, the FLSA does not provide Plaintiff with a claim for the allegedly unlawful deductions from his wages and the claim fails as a matter of law.

Based on the foregoing, this Court respectfully recommends that Plaintiff's motion for summary judgment be denied with respect to his first cause of action and that Defendants' motion for summary judgment be granted with respect to this claim.

2. Retaliation in Violation of the FLSA

Plaintiff alleges that Defendants retaliated against him by terminating him immediately following the making of his complaint concerning commissions owed to him on April 22, 2015. (Am. Compl. ¶¶ 62-69.) Both sides seek summary judgment with respect to this claim.

"The FLSA makes it unlawful to 'discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under the [FLSA]." Dunn v. Sederakis, 143 F. Supp. 3d 102, 109 (S.D.N.Y. 2015) (quoting 29 U.S.C. § 215(a)(3)). Mere disputes over an employer/employee contract, however, do not fall under the protections of the FLSA. See Dunn, 143 F. Supp. 3d at 110-11. "That is because, under settled law, the FLSA neither converts an employer's contract breach into a violation of federal law, nor generally federalizes disputes between employers and employees." Id. (citing cases).

FLSA retaliation claims are subject to the three-step burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Dunn, 143 F. Supp. 3d at 109. "A prima facie case of retaliation is established by '(1) participation in a protected activity

7

known to the defendant, like the filing of an FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" Id. (quoting Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010)). In recent years, the Second Circuit revised its long-standing definition of FLSA protected activity to include oral complaints made to employers "so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir. 2015) (quoting Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1 (2011)). "Courts interpreting this standard have held that the protected complaint must allege that the employer engaged in an FLSA violation (i.e., nonpayment of minimum wages and overtime wages)." Mokrov v. Aeroflot Russian Airlines, No. 20 Civ. 588, 2021 WL 2435801, at *4 (S.D.N.Y. June 15, 2021) (citing Dunn, 143 F. Supp. 3d at 112) (collecting cases).

  Here, Defendants assert that Plaintiff never made a complaint protected by the FLSA, thereby precluding any claim for retaliation under the statute. (Def. Mem. of Law 14.) Interestingly, Plaintiff fails to oppose this argument in any way, instead focusing his reply brief solely on his claim for retaliation under the NYLL. Accordingly, Plaintiff appears not to challenge Defendants' argument that he never engaged in protected activity within the meaning of the FLSA. Moreover, Plaintiff's moving papers assert that Plaintiff engaged in protected activity on April 22, 2015 when he complained about commissions that were allegedly not properly paid. (Pl. Mem. of Law 10.) As set forth above in connection with Plaintiff's claim for unlawful deductions from wages, it is undisputed that any claim for failure to pay commissions is not viable under the FLSA. Therefore, it follows that any complaint about such action does not

8

meet the standard set forth by the Secod Circuit in Greathouse and therefore is not protected under the FLSA. As such, Plaintiff's claim for retaliation in violation of the FLSA fails as a matter of law.

Based on the foregoing, this Court respectfully recommends that Plaintiff's motion for summary judgment with respect to his claim for retaliation in violation of the FLSA be denied and that Defendants' motion for summary judgment with respect to that claim be granted.

Having found that Defendants are entitled to summary judgment on all of Plaintiff's federal claims, there remains no independent basis for federal jurisdiction. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to the NYLL, see 28 U.S.C. § 1367(a), this Court recommends that the District Court decline to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

However, assuming arguendo that the District Court chooses to retain supplemental jurisdiction over Plaintiff's state law claims, this Court will consider the merits of each such claim.

  B. Plaintiff's State Law Claims

    1. Failure to Pay Commissions in Violation of the NYLL

Plaintiff's second cause of action asserts that Defendants violated the NYLL when they failed to pay him commissions earned. (Am. Compl. ¶¶ 53-61.) Both Plaintiff and Defendants seek summary judgment with respect to this cause of action.

9

> Section 191(1)(c) of the New York Labor Law provides, in pertinent part:
>
> A commission salesperson shall be paid the . . . commissions . . . earned or payable in accordance with the agreed terms of employment, . . . if monthly or more frequent payment of wages, salary, . . . or commissions are substantial, then additional compensation earned . . . may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan.

N.Y. Labor L. § 191(1)(c). A claim brought pursuant to this provision "hinges on whether Plaintiff is owed commissions 'earned . . . in accordance with the agreed terms of employment.'" Zuckerman v. GW Acquisition LLC, No. 20-CV-8742, 2021 WL 4267815, at *15 (S.D.N.Y. Sept. 19, 2021 (quoting N.Y. Labor L. § 191(1)(c)). "Accordingly, a claim under section 191(1)(c) 'rises and falls with plaintiff's claim for breach of contract, and [any] failure to establish a contractual right to wages necessarily precludes a statutory claim under New York's labor law.'" Zuckerman, 2021 WL 4267815, at *15 (quoting Williams v. Preeminent Protective Servs., Inc., No. 14-CV-5333, 2017 WL 1592556, at *4 (E.D.N.Y. Apr. 28, 2017)) (alteration in original) (additional citations omitted); see also Apple Mortg. Corp. v. Barenblatt, 162 F. Supp. 3d 270, 289 (S.D.N.Y. 2016) ("Failure to establish a contractual right to wages necessarily precludes a statutory claim under New York's labor law.").

The dispute at the heart of the within action is whether or not the parties had an agreement with respect to the commission to be paid to Plaintiff. While both sides agree there is no written agreement covering Plaintiff's compensation, Plaintiff asserts that he had an oral agreement entitling him to be paid commission calculated at seven percent of the profit margin of sales generated by Plaintiff. Defendants dispute the existence of any such oral agreement.

Although a contract may be formed without written agreement, see Delaney v. Bank of Am. Corp., 766 F.3d 163, 171 (2d Cir. 2014), the New York Statute of Frauds requires certain contracts to be in writing. See N.Y. Gen. Oblig. Law § 5-701. "An agreement that has not been

10

reduced to writing is void if, '[b]y its terms [it] is not to be performed within one year from the making thereof.'" Nasso v. Bio Reference Labs, Inc., 892 F. Supp. 2d 439, 447 (E.D.N.Y. 2012) (quoting N.Y. Gen. Oblig. L. § 5-701(a)(1)). The "fundamental question" in determining whether an agreement is barred by the Statute of Frauds is "whether the parties could have performed under the agreement within one year." Williams, 2017 WL 1592556, at *5 (quoting Levine v. Zadro Prod., Inc., No. 02-CV-2838, 2003 WL 21344550, at *3 (S.D.N.Y. June 9, 2003)). "The endurance of defendant's liability is the deciding factor." Williams, 2017 WL 1592556, at *5 (quoting Nat Nal Serv. Stations, Inc. v. Wolf, 304 N.Y. 332, 337 (1952)).

It is well-settled that "[a] service contract of indefinite duration, in which one party agrees to procure customers or accounts or orders on behalf of the second party, is not by its terms performable within one year – and hence must be in writing . . . – since performance is dependent, not upon the will of the parties to the contract, but upon that of a third party." Nasso, 892 F. Supp. 2d at 447 (quoting Zupan v. Blumberg, 2 N.Y.2d 547, 550 (1957)) (additional citations omitted) (alteration in original); see also Williams, 2017 WL 1592556, at *5 ("[W]hen the accrual of commission is dependent upon the will of a third party and not upon the parties to the contract, the oral commission agreement is, by its terms, incapable of completion within one year."). "Where the terms of a service contract 'are such that the relationship will continue beyond a year,' the Statute of Frauds applies to the contract, 'even though the continuing liability to which defendant is subject is merely a contingent one.'" Nasso, 892 F. Supp. 2d at 447 (quoting Martocci v. Greater New York Brewery, Inc., 301 N.Y. 57, 62-63 (1950)).

While the parties dispute that an oral agreement to pay Plaintiff commission at a rate of seven percent even existed, that dispute is irrelevant because even if such an agreement exists, it is clearly governed by the Statute of Frauds. According to Plaintiff, he was entitled to

commission on all sales he generated. The very nature of such an agreement is for an indefinite duration "because its performance depends on the actions of third-parties." Nasso, 892 F. Supp. 2d at 447. Any purported obligation to pay commission by Defendants depended on whether and when a third-party decided to make a purchase based on a sale generated by Plaintiff. "That occurrence was outside Defendants' control and may not occur for an indefinite time in the future." Williams, 2017 WL 1592556, at *5 (citation omitted). Accordingly, "[u]nder the terms of the alleged agreement, [Defendants'] liability remains open without any clear end date." Nasso, 892 F. Supp. 2d at 447-48.

Based on the foregoing, the Statute of Frauds renders any oral agreement between the parties unenforceable. As a result, Plaintiff's claim for unpaid commissions in violation of the New York Labor Law is premised on an unenforceable agreement, which renders that claim insufficient as a matter of law. Accordingly, this Court respectfully recommends that Plaintiff's motion for summary judgment be denied with respect to his second claim for relief and that Defendants' motion for summary judgment with respect to that claim be granted.

    2.    Retaliation in Violation of the NYLL

Plaintiff's fourth claim for relief alleges retaliation in violation of the NYLL. Only Plaintiff moves for summary judgment as to this cause of action.

Similar to the FLSA, Section 215 of the NYLL prohibits retaliation against any employee who "has made a complaint to his or her employer, or to . . . any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the NYLL. N.Y. Labor L. § 215(1)(a). "An employee complaint or other communication need not make explicit reference to any section or provision [of the Labor Law] to trigger [its] protections." Id. Claims for retaliation in violation of the NYLL are analyzed

12

under the same burden-shifting framework as FLSA retaliation claims. See Benzinger v. Lukoil Pan Americas, LLC, 447 F. Supp. 3d 99, 130 (S.D.N.Y. 2020) ("The Court evaluates FLSA and NYLL retaliation claims under the same McDonnell Douglas burden-shifting framework."); Crawford v. Coram Fire Dist., No. 12 CV 3580, 2014 WL 1686203, at *5 (E.D.N.Y. Apr. 29., 2014) ("Retaliation claims analyzed under FLSA and Labor law apply the three-step burden-shifting framework identified in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972).").

As with Plaintiff's FLSA retaliation claim, Plaintiff alleges that he engaged in protected activity when he complained to Defendants about his commission on April 22, 2015 and was subsequently terminated that same day. The difference between Plaintiff's FLSA retaliation claim and his NYLL retaliation claim, however, is that Plaintiff's complaint on April 22, 2015 was about an action covered under the NYLL. Accordingly, Plaintiff has established a prima facie case of retaliation under the NYLL.

Where the plaintiff adequately demonstrates a prima facie case of retaliation, "the burden shifts to the defendant to articulate a 'legitimate, non-[retaliatory] reason for the employment action.'" Benzinger, 447 F. Supp. 3d at 130 (quoting Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010)) (additional citation omitted) (alteration in original). The burden then shifts back to the plaintiff to "produce 'sufficient evidence to support a rational finding' that defendants' proffered rationales 'were false, and that more likely than not [retaliation] was the real reason for the employment action." Benzinger, 447 F. Supp. 3d at 130 (quoting Mullins, 626 F.3d at 53-54).

Defendants contend that Plaintiff was terminated for insubordination based on his use of profanity in the text messages exchanged with Parveen on April 22, 2015, and during the

13

meeting held that same day. Accordingly, Defendants have satisfied their burden of demonstrating a legitimate, non-retaliatory reason for Plaintiff's termination. Whether or not that reason is merely a pretext for retaliation is a question of fact for a jury, which precludes summary judgment on this claim. "While the time between the protected act and the purported adverse employment action" – here, the very same day – "may be sufficient to establish an inference of causal connection at the prima facie stage, . . . it is insufficient to establish that [Defendants'] proffered reason is pretextual." Vazquez v. 142 Knickerbocker Enter., Corp., 409 F. Supp. 3d 81, 85-86 (E.D.N.Y. 2018) (citing El Sayed v. Hilton Hotels Corp., 627 F.3d 93, 933 (2d Cir. 2010)) (internal citation omitted). Accordingly, this Court respectfully recommends that Plaintiff's motion for summary judgment be denied with respect to his claim for retaliation in violation of the NYLL.

### 3. Conversion

Plaintiff's fifth cause of action asserts that, by failing to pay him commissions earned, Defendants engaged in the unlawful conversion of Plaintiff's wages to which he was entitled immediate possession. (Am. Compl. ¶¶ 78-85.) Both parties move for summary judgment as to this claim.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Nasso, 892 F. Supp. 2d at 454 (quoting Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44 (1995)) (additional citations omitted). While New York law "recognizes an action for conversion of money," it requires plaintiff "to have 'ownership, possession or control of the money' before its conversion." Komlossy v. Faruqi & Faruqi, LLP, No. 15 Civ. 9316, 2017 WL 722033, at *10 (S.D.N.Y. Feb. 23, 2017), aff'd, 714 Fed. App'x 11 (2d Cir. 2017) (quoting ESI, Inc. v. Coastal

14

Power Prod. Co., 995 F. Supp. 419, 433 (S.D.N.Y. 1998)); see also Fin. Tech. Int'l, Inc. v. Smith, 247 F. Supp. 2d 397, 413 (S.D.N.Y. 2002) ("[C]onversion claims may be based on money only if the plaintiff has a right to the immediate possession of a specific, identifiable amount.").

As Plaintiff correctly points out, "[t]he improper withholding of an employee's wages can support a conversion claim." Short v. Churchill Ben. Corp., No. 14-CV-4651, 2016 WL 8711349, at *21 (E.D.N.Y. Apr. 8. 2016) (collecting cases). However, there are genuine issues of fact here as to whether or not Defendants improperly deducted money from Plaintiff's wages. As such, Plaintiff's conversion claim is incapable of resolution on summary judgment. Accordingly, this Court respectfully recommends that both Plaintiff's and Defendants' motions for summary judgment be denied as to this claim.

    4.    Unjust Enrichment

Plaintiff's final claim for relief alleges unjust enrichment by Defendants. (Am. Compl. ¶¶ 86-90.) Both Plaintiff and Defendants seek summary judgment as to this claim.

"To prevail on an unjust enrichment claim [under New York law], a plaintiff must prove that the defendant received a benefit at the plaintiff's expense and retention of that benefit would be unjust." Accosta v. Lorelei Events Grp. Inc., No. 17-cv-7804, 2022 WL 195514, at *5 (S.D.N.Y. Jan. 21, 2022) (quoting Levion v. Socite Generale, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011)) (additional citation omitted) (alteration in original). Plaintiff asserts that Defendants were unjustly enriched when they failed to compensate Plaintiff for "side deals" he transacted on behalf of Reliance that were made outside of Reliance's internal record keeping system. (Pl. Mem. of Law 16.) Plaintiff further asserts that Defendants were unjustly enriched when they failed to pay Plaintiff his full commissions owed. (Am. Compl. ¶¶ 89.)

As its abundantly clear from the parties' Rule 56.1 Statements, there are numerous issues of fact as to whether Plaintiff engaged in any purported "side deals" and, if so, whether he was compensated at the proper rate. Such issues preclude summary judgment as to Plaintiff's claim for unjust enrichment. Accordingly, this Court respectfully recommends that both Plaintiff's and Defendants' motions for summary judgment be denied with respect to this claim.

III.   Individual Liability of Parveen Narula

Both parties also move for summary judgment with respect to the individual liability of Defendant Parveen under both the FLSA and the NYLL. Having recommended that all claims pursuant to the FLSA fail as a matter of law, the Court will only address Parveen's alleged liability under the NYLL. However, as explained, the definition of employer is the same under either statute.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The NYLL's definition of "employer" mirrors that of the FLSA. N.Y. Labor L. §§ 190(3), 651(6); see also Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (holding that "district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA.") (citation and internal quotation marks omitted).

To determine whether an individual is an "employer" under both the FLSA and the NYLL, the Second Circuit utilizes the economic realities test, focusing on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Irizarry v. Catsimatidis, 722 F.3d 99, 104-05

16

(2d Cir. 2013) (citation omitted); see also Santillan v. Heneao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) ("New York's Labor Law is the state analogue to the federal FLSA."). In addition, the analysis depends on whether the defendant had "operational control" over employees. Irizarry, 722 F.3d at 110. Operational control does not necessarily require direct contact with employees and workplaces. It requires, essentially, that the employer exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment." Id.

      Here, it is undisputed that Parveen is the CEO and ninety-nine percent owner of Reliance and that he controls the terms and conditions of its operations. (Pl. 56.1 ¶¶ 3-4, 17; Def. 56.1 ¶ 1.) It is further undisputed that prior to commencing his employment with Reliance, Plaintiff met with Parveen at his office in New Jersey to discuss Plaintiff's employment. (Pl. 56.1 ¶ 40; Def. 56.1 ¶ 15.) Moreover, any deductions made to an employee's commissions were made at the instruction of Parveen or Reliance's Chief Financial Officer, Mark Feldman. (Pl. 56.1 ¶¶ 30, 52.) There is also no dispute that on December 4, 2013, Parveen directed Reliance's accounting department to deduct from Plaintiff's salary all commissions previously paid in connection with a particular account. (Id. ¶ 82.) Finally, it is undisputed that the decision to terminate Plaintiff, while possibly initiated by Lever of Human Resources, was ultimately approved by Parveen. (Id. ¶ 101.)

      Based on the foregoing, this Court finds that there is no genuine issue of material fact that Parveen had "operational control" over Reliance and its employees such that he should be subject to individual liability should Plaintiff prevail on his retaliation claim pursuant to the NYLL. It is clear even from the few statements of fact that are not disputed that Parveen had the authority to hire and fire employees and to make payroll and personnel decisions. Accordingly,

this Court respectfully recommends that Plaintiff's motion for summary judgment be granted with respect to the individual liability of Parveen and that Defendants' motion with respect to this issue be denied.

IV.   The Claims Against the Non-Reliance Defendants

Finally, Defendants move for summary judgment with respect to all claims alleged against the non-Reliance Defendants – Airtyme, Delhi Heights, Myra Properties, and Wireless Works. In support of their motion, Defendants assert that none of the non-Reliance Defendants were ever Plaintiff's employer. (Def. Mem. of Law 19-20.) Plaintiff does not move for summary judgment with respect to this issue and opposes Defendants' motion.

As Plaintiff points out, not all of his claims hinge on whether each defendant entity was his employer. Rather, Plaintiff alleges that he was required to conduct business on behalf of the non-Reliance Defendants as the basis for his unjust enrichment claim, a fact that is very much in dispute herein and requires a determination by a jury. Moreover, as Plaintiff also points out, there is a triable issue of fact as to whether the defendant entities may be considered a joint employer. For these reasons, this Court respectfully recommends that Defendants' motion for summary judgment with respect to all state law claims alleged against Defendants Airtyme, Delhi Heights, Myra Properties, and Wireless Works be denied.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for summary judgment be granted with respect to all of Plaintiff's FLSA claims (Count I – unlawful deductions from payroll, and Count III – retaliation). There no longer being an independent basis for federal jurisdiction, the Court also recommends that the District Court

decline to assert supplemental jurisdiction and that Plaintiff's state law claims be dismissed, without prejudice.

Should the District Court choose to retain jurisdiction over Plaintiff's state law claims, the Court respectfully recommends that Defendants be granted summary judgment with respect to Count II of the Amended Complaint – failure to pay commissions in violation of the NYLL. The Court further recommends that Plaintiff's motion for summary judgment be granted with respect to the issue of Defendant Parveen Narula's individual liability under the NYLL. The Court also recommends that Defendants' motion for summary judgment be denied with respect to the state law liability of the non-Reliance Defendants, Airtyme, Delhi Heights, Myra Properties and Wireless Works. Finally, the Court respectfully recommends that both Plaintiff's and Defendants' motions for summary judgment be denied with respect to Count IV – retaliation in violation of the NYLL, Count V – conversion, and Count VI – unjust enrichment.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure

19

to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
       February 28, 2023                      /s/    Anne. Y. Shields
                                                                          ANNE Y. SHIELDS
                                                                          United States Magistrate Judge